At a Court of Oyer and Terminer, held at this term, Thomas Vines was indicted and tried for the murder of Abraham M. Deputy in the first degree, in South Milford, on the 9th day of the present month. The prisoner was going home about 6 o'clock in the afternoon of that day, in a south direction on the east side of Walnut street, and had crossed Front street in South Milford, when the deceased, who was just then coming down Front street towards the crossing and when not more than twenty-five or thirty feet behind him was heard to call to him and say, "stop you d_____d lying, thieving son-of-a-bitch! and let us have it out right here," but the prisoner continued on his course, the deceased still following him with accelerated steps, and paid no *Page 425 
attention to him, until he soon called to him a second time and repeated the insulting epithets, when he stopped and turned around and faced him, but without advancing at first to meet him, and asked him who he was calling "a d_____d lying, thieving son-of-a-bitch?" The prisoner then advanced some steps to meet him, and as soon as they met face to face the deceased struck two blows at him, first with his right and then with his left fist, and then seized hold of him bodily, but though witnessed by four or five persons at different points on the street at some distance from them, no one saw the prisoner strike him a blow, except that one of them who was sitting at a front window of a house fifty feet from them, saw the prisoner draw back his right hand and strike the deceased in his left side. They then separated and the prisoner went on up the street towards his home. The witness then put on his hat and went out on the street, and found that the deceased had been stabbed and was bleeding. The first physician called to see him stated that he found him not long afterwards lying on the ground at the corner of Walnut and Front streets in South Milford. wounded in his left side, and the second who had arrived after he had been removed to his house, and who afterwards conducted the post mortem examination of his body before the coroner's inquest, testified that there were two stabs made, he judged, with a sharp-pointed knife in his left side, one a little lower than the other, and that the upper one had penetrated the heart about an inch in length and about three-fourths in depth, and was necessarily mortal, although the other, which he also described, he thought would have been fatal without it. The voluntary statements made by the prisoner to the constable and to the Justice of the Peace by whom he was committed were put in evidence by the State, the substance of which was that after they had come together on the occasion, Deputy struck him twice with his fists and then collared him to choke him, and that he had once choked him before and he was afraid he would kill him; and when he collared *Page 426 
him and tried to choke him he had his knife in his hand, and he supposed he then struck him with it, but whether one or twice he could not say, as he did not remember. And when asked by the constable at the time of his arrest if he had any knife, he took from his pocket a common sized Barlow knife and delivered it to him, and which he then produced and identified. The deceased was a stout and athletic man, the prisoner a small and feeble one; and he was represented by a number of very respectable citizens of the place who were called to testify on the subject, to be a man of a peaceable, quiet and orderly character.
Homicide is justifiable, excusable or felonious. The taking of human life is said to be justifiable when done in the execution of public justice, as in the case of a person who has forfeited his life by the laws of his country and the verdict of a jury; or, in the advancement of public justice, where an officer kills a person charged with felony, when the latter assaults and resists him; or, for the prevention of any violent and atrocious crime, as where a person who is killed had attempted a robbery, or to murder another, or to break into a house in the night-time.
Excusable homicide is the accidental killing of another, that is, by misadventure, unaccompanied by any criminally careless and reckless conduct; or, where the killing is in self-defense, upon a sudden affray or desperate attack. This self-defense is the right of natural defense and self-protection, and does not imply the right of attacking. To malice good this excuse for the killing of another it must be shown that the accused had no other possible or probable means of escaping from his assailant, and that he must have been in imminent and manifest danger of either losing his own life, or of suffering great bodily harm. And it must farther appear that the accused was closely pressed by the deceased, and that he retreated as far as he safely could, in good faith and with an honest intent to avoid the violence of the assault. *Page 427 
Felonious homicide is subdivided, under the statutory laws of Delaware, into murder of the first degree, murder of the second degree and manslaughter. Murder of the first degree is defined by the statute in these words: "Sec. 1. Every person who shall commit the crime of murder with express malice aforethought, or in perpetrating or attempting to perpetrate any crime punishable with death, shall be deemed guilty of murder of the first degree and of felony. Sec. 2. Every person who shall commit the crime of murder otherwise than is set forth in the preceding section shall be deemed guilty of murder of the second degree and of felony." The general definition of murder is where a person of sound memory and discretion kills any reasonable creature in being, under the peace of the State, with malice aforethought, either express or implied. Express malice is proved by evidence of a deliberately formed design to kill another, and such design may be shown from circumstances, such as the selection of a deadly weapon, privily lying in wait, a previous quarrel, former threats, the preparation of poison, or the like. Implied or constructive malice is an inference or conclusion of law, as where the accused may not have intended to take life, but may have been engaged in some other unlawful or felonious act, from which the law raises the presumption of malice. The law presumes malice from every act of killing, unless the circumstances proved exclude or rebut such presumption; and, in general, the act of killing being proved, it is incumbent on the accused to show that his deed was not the result of malice, either express or implied. And he may do this by showing that he had no intent to kill, that the act of killing was either accidental, or was done in self-defense, and therefore excusable; or that the deed was committed upon a sudden, adequate and sufficient provocation in the heat of passion and with no intent to take life, being entirely without premeditation and without time for reflection. And this brings us to the definition of manslaughter which is the unlawful killing of another without *Page 428 
malice, either express or implied, and on a sudden and sufficient provocation, and differs from excusable homicide in this, that in self-defense there is an apparent necessity for self-preservation to kill the aggressor, but in manslaughter there is no necessity at all, being only a sudden act of anger or of revenge.
Having now briefly passed in review the different kinds of homicide, as defined by the common and the statutory law, we will proceed to consider the modifications made in the crime of murder by the statute. Malice is the essential element of murder at common law, and is also necessary to constitute murder of either degree under the statute, but with this difference, that the act of killing must be committed with express malice aforethought, or in the perpetration, or the attempt to perpetrate, a crime punishable with death, to make it murder of the first degree, and that where the act is done without express malice, and is accompanied only with implied or constructive malice, it is then murder of the second degree. The broad distinction between murder of the first degree and murder of the second degree is the distinction between express malice aforethought and implied or constructive malice; either degree of murder under the statute is the same as at common law, but under the statute different penalties are prescribed for the different degrees. The premeditated design to take life is evidence of express malice, and may be shown by secretly lying in wait, the use of a weapon almost certain to cause death, the previous utterance of threats, former grudges, and the like; and when this design has been fully completed and carried out, the act becomes murder of the first degree. Murder of the second degree is where the intent to kill is not clearly proved, but the act of killing is lone suddenly, in the heat of passion, and without sufficient or adequate provocation, so as to reduce it to manslaughter, or while in the commission of an unlawful act not punishable with death. The law, indeed, presumes malice, but it is implied or constructive malice, and *Page 429 
not express malice aforethought. In determining the intent, or motive with which an act is done, in the absence of express words, we can only judge from the circumstances of the particular case which may be at the time under consideration. As a general rule, every one is presumed to intend the natural consequences of his own act. Thus a bullet shot into the brain of a man, or a knife thrust into his heart, is known to be fatal to life, and the person who shoots the ball, or uses the knife, is presumed to intend the natural consequence in either case.
Manslaughter, the lowest degree of felonious homicide, as we have already informed you, is the killing of another without malice, either express or implied, but the act is committed in the heat of blood and upon great, sufficient or adequate provocation. And it is important that you should bear in mind that to reduce the offense from murder of either degree to manslaughter, there must be an absence of malice and the proof of provocation; that is, there must have been no premeditated design to kill, and the accused must have acted suddenly, in a transport of rage, excited by an actual assault, by a physical contest with the deceased, and such assault or contest must have been first made or begun by the deceased. And it is equally important to remember that the act of force, or chastisement, intended on the part of the accused, bore some reasonable proportion to the provocation received, and did not proceed from brutal rage or reckless malignity. In other words, a feeble assault, or a slight blow, should not be allowed to establish this defense, nor should the accused be permitted to palliate the crime when he has invited or defied the attack, so as to make it a pretext for striking down a weaker or unarmed adversary.
Another principle or rule of law on this subject, and one which you must carry with you in your deliberations, is that no taunting, irritating, or threatening words or expressions, or any insulting or defiant gestures on the part of the deceased, unaccompanied by an actual assault, or *Page 430 
blows, will constitute a sufficient provocation to reduce the grade of the offense below murder.
Now, gentlemen, you are to apply these principles and provisions of law to the case of Thomas Vines, the prisoner at the bar. To do this with a view to arrive at a true and just verdict, you must recall the facts proved by the witnesses in your hearing. There are some facts directly proved and ascertained. It is known that Abraham M. Deputy met his death at the hands of the prisoner; that the two men encountered each other on Friday evening last, between six and seven o'clock, at Cedar Creek Hundred, in Sussex county; and that then and there the prisoner, with a common barlow knife, inflicted upon the body of Deputy two wounds which caused his death on the following Sunday morning. It is also in proof and uncontradicted, that immediately before the encounter, Thomas Vines was walking along Walnut street, in South Milford, going towards his house, and had passed beyond the lower side of Front street, and that at the same time Deputy was following a short distance behind, calling to Vines to stop making use of obscene language and opprobrious and threatening words and epithets. At this point you must picture to your minds their positions, movements, and acts as narrated by the witnesses. Vine was still proceeding in the direction of his house, until Deputy had also crossed to the lower side of Front street, when, suddenly, Vines halted, turned round and, inquiring who are you calling a ________ retraced his steps, going back to meet Deputy, taking his hand from his pocket, and using the motions described by the witnesses. Deputy still continuing his progress, the men came into collision. Here, at this precise moment, you must apply the legal definition of self-defense to the actual facts of this case for it is on this ground that the prisoner claims he acted and therefore asks to be acquitted. You must inquire whether it was necessary for Vines to stop, turn bat k and go to meet Deputy? Was his life in peril or was he in imminent danger of suffering great and enormous *Page 431 
bodily harm or injury, if he had not turned and faced his pursuer? Was he pressed to the wall, in the language of the books, and had no other possible or probable means of escape from Deputy. These questions must be answered in the affirmative to establish the plea of self-defense. You must take into consideration the time, place and surrounding circumstances. The time was early in the evening, the place within hailing distance of help, and it does not appear that Deputy was armed, or that Vine was too weak or feeble to make good his escape, or to get rid of his pursuer if he had chosen to do so. Were the facts attending this affray such as to force the belief on your minds that Vines thought, and had reasonable grounds to think, that his life or personal safety was in such immediate and instant danger that there was no chance or probability of escape from death, or great bodily harm, except by killing Deputy? Had he no other way out of the difficulty except by turning back meeting Deputy and striking him down? It is our duty to say to you that unless you thus believe you cannot acquit the prisoner on the plea of self-defense. In making up your judgment on this theory of the defense, you must carefully consider the danger of giving too wide a latitude, or a too liberal and easy reception to this excuse. The danger is that if indulgence is shown and the rule of law is thereby relaxed, inducement and temptation may be held out to the evil disposed, and to such as are inclined to deeds of violence and crime, to take the law into their own hands and to constitute themselves the judges of the facts necessary to support this plea.
If you should not be satisfied that the prisoner acted fairly and honestly in self-defense, and of this you are the sole judges, you are then brought to the consideration of the question: is the prisoner guilty of murder of either degree, or of manslaughter?
If there is no evidence of express malice aforethought on the part of Vines when he struck the fatal blows, that is of a premeditated design or formed intent to kill, which *Page 432 
can be proved only in the manner already stated to you, by the words of the prisoner or his conduct, or his previous relations to the deceased, then he cannot be guilty of murder of the first degree. To convict of this offense you must satisfy your minds from the evidence in the case, that the prisoner acted with express malice. As to the second degree, if there was no clear and well-defined intent to kill, we mean no evidence of such intent, and it appears that it was the purpose of the prisoner to inflict punishment, or injury, only upon the deceased, and that he acted in a sudden heat of passion, without premeditation, and also without sufficient provocation, then the law presumes malice, and the act was done with implied or constructive malice, and is murder of the second degree. And, lastly, if you should be of the opinion that the evidence warrants the conclusion that he is not guilty of either degree of murder, but that being assaulted or violently attacked with blows, by the deceased, and that such assault or attack was a sufficient and adequate cause of provocation, by which the prisoner was suddenly excited to a transport of rage or heat of passion, and for the instant losing control of his faculties and the exercise of his judgment, struck the deceased with his knife, then he acted without malice, either express or implied, and is guilty of manslaughter only.
Proof of good character is available only in doubtful cases, for the purpose of showing that the accused had not a wicked or evil intent at the time the act complained of was committed, and to establish the inference that a person who had always lived a peaceable and orderly life, unstained by acts of violence, and whose general reputation as a law-abiding and well-disposed citizen had hitherto been unquestioned, would not suddenly act in manner contrary to his previous conduct and habits. But the reputation for good character, however excellent and irreproachable, should not be allowed to weigh against positive, direct and uncontradicted evidence. *Page 433 
Finally, we repeat that you are the judges of the facts which have been testified to, that is, you are to judge what facts have been proved, and it is for you to declare whether the evidence has convinced you, beyond a reasonable doubt, that the prisoner is guilty of either degree of murder, or of any offense whatever. You are not to be governed by probabilities, but by the consideration whether the prisoner's innocence is reasonably inconsistent with the evidence; for the rule of law in this subject is, that every person is presumed to be innocent until he is proved guilty, and that his guilt must be proved beyond a reasonable doubt. This doubt must be an intelligent and reasonable one, naturally arising from deficient, conflicting or uncertain evidence, and not a possible, imaginary or vague doubt. It must be a doubt honestly entertained, and such as prevent the forming of a satisfactory opinion.
It is your duty carefully and seriously to investigate and weigh the evidence, with a correct and conscientious desire to arrive at the truth and to render a verdict accordingly.